Curia, per

Richardson, J.
The only question is, upon the proper construction of the agreement between Christi-ana and Edward Hatcher. Did she intend to surrender or release to him her estate for life, so as to make the re-mainderman, thereafter, the exclusive owner 1 That she intended by the agreement to give some estate, or privi *431 lege, to Edward, is evident. But Mrs. Hatcher, being a freeholder during her own life, could, of course, make any lease, or give any less estate, tenancy, or privilege, without surrendering her freehold. In the contest for the one of the other of such estates, the court is to decide. And we are to bear in mind, that a freeholder for life, and one in fee simple, belong to the same class of estates. It is difficult to perceive in the agreement, that without any valuable consideration, or any reciprocal benefit, she intended to surrender her entire freehold, when so many less estates might have answered the purpose of her evident gratuity, and object of peace. If Edward had been any other than the remainderman, or a stranger, or Christiana the owner in fee simple, could we conclude that she had released her whole estate? If the freehold be given, why give him the expressed privilege to build and clear the lands ? If so given, why make him, in a certain event, forfeit his “ improvements” only, which would be useless to her, if he kept the land, and inconsistent with the character of a freehold estate in him ? Such a forfeiture would have been idle in that case; and therefore it presupposes the land still in her. ' In such anomalous agreements, we must look to the instrument for its own construction, as identical papers cannot be found already adjudged. In the instance before us, it may have been more than a tenancy at will; but assuredly, not more than a lease to terminate upon reasonable notice, or a privilege during his life and peaceable behaviour, Mrs. Hatcher reserving still her freehold.
A mere gratuity should be plain, and ought not to be. extended to its utmost latitude and by mere construction against the giver, when a less estate, and a very common one, may have been intended for the gift. Some mere lease or privilege must therefore have been the object of the agreement, and when Edward died, it passed away, and her life estate stood unimpaired by the agreement. The motion for a new trial is, therefore, granted.
Evans and Earle, JJ. concurred.
O’Neall, J.
I regret that I cannot take the view In this case which has been taken by a majority of *432 my brethren. But were it not for the fact, that the report was prepared by counsel, and does not set out the reasons-of my judgment, I should not care to state now the reasons of my dissent. As it is, I think it right and proper, that I should state the grounds why I do not concur in the judgment just read.
An instrument like the one in this case, is to be fairly construed by reading all its parts together, as applied to the subject matter of which it treats. If there be any doubt, it is to be resolved against the grantor. Taking these rules as our guide, I think there can be little doubt that the grantor, Mrs. Hatcher, intended to surrender to the remain-derman so much of her life estate in the land, as he might enter upon and improve, under the condition that the estate thus surrendered might be resumed, if he (the remain-derman) should interrupt or suffer any of his family to in-rupt any thing belonging to the said C. Hatcher, and should fail to.pay the cash value of said interruption. If this be not the true interpretation, I would ask, why it was that the condition of forfeiture of the “ improvements” to be made by the said remainderman was inserted in the agreement 1 For, if it was only a tenancy at will, the grantor could enter, at any time after a notice of six months to quit at the end of the year. TJie condition of forfeiture shows that the tenant for life could not enteruntil the forfeiture was incurred, and hence the notion of a tenancy at will is at an end. It cannot be, that it conveys only an estate for the life of the remainderman, for his covenants are not only for himself, but for his family, and the forfeiture is of the only roofs which he had provided to cover his wife and children, after his own head had been covered by the clods of the valley. The general grant of the tenant for life is ta the remainderman to enter at once upon the land, build and make any “improvements that he thinks proper.” This was to ail intents and purposes a surrender of her life estate in so much of the land as he might build upon and improve. To say that his estate was defeated by his death is to visit loss upon a man by the act of God, and which had not been prescribed as a condition of forfeiture or termination by tne parties. Such a thing was never before heard of.
*433 The only doubt which I ever entertained, was whether the agreement could operate, from its form, as a surrender. That, however, has been removed by Smith vs. Mapleback, 1 T. R. 441. In that case Smith was the proprietor of the “ Three Jolly Sailors, at Rotherhite,” for a long term of years. He demised the premises to Swin, and Swin to Sellon. Smith afterwards applied to take the premises, and the following agreement, between Sellon and Anne Smith as the agent of her husband, was entered into, viz: “Agreement between Mr. Smith and Mr. Sellon for the Three Jolly Sailors at Rotherhite, Mr. Smith to have the house on the terms mentioned in the lease, and to pay £8 10s. over and above the rent annually, towards the good will already paid by Mr. Sellon.” It was adjudged, that this was a surrender, and that the plaintiff was in under his original term, and that it was not a lease from year to year. If that agreement was properly construed to imply a surrender, much more, it appears to me, ought this to be so construed.
Butler, J., signed neither opinion.